ALSD Local 106 (Rev. 07/13) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

that are stored at premises controlled by Google LLC

Case No. MJ- **22-0093-MU**

Filed under seal

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* See Attachment A.

located in the ___ Northern ___ District of ___ California ___, there is now concealed *(identify the person or describe the property to be seized):* See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of  180  days (give exact ending date if more than 30 days:  12/26/2022  ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Daniel R. Sigmond, FBI Special Agent
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: 07/61/2022

City and state:  Mobile, Alabama

*Judge's signature*

P. Bradley Murray, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH OF THE
GMAIL ACCOUNTS

**THAT ARE STORED AT PREMISES
CONROLLED BY GOOGLE LLC**

**MJ-** 22-93
**USAO NO. 2021R00598**
**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A SEARCH WARRANT

I, Daniel R. Sigmond, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Google LLC ("Google"), an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (the "Provider"). The information to be searched is described in the following paragraphs and in Attachment A and includes ("**Target Account 1**") and ("**Target Account 2**") (collectively, the "**Target Accounts**"). This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require the Provider to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government authorized persons will review that information to locate the items described in Section II of Attachment B. Attachments A and B are hereby incorporated into this affidavit as if set forth fully herein.

1

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been so employed since July 9, 2005. As part of my duties, I investigate numerous criminal violations, including those relating to conspiracy to defraud the United States, aggravated identity theft, access device fraud, mail fraud, wire fraud, bank fraud, securities and commodities fraud, attempt and conspiracy crimes, and money laundering. I have experience and have received hundreds of hours of training in the investigations of various violations of federal law, including white-collar crime. I have investigated and collected evidence of all types of crimes, including those perpetuated in-person and by mail, carrier, computers, information systems, cellular devices, and telecommunication networks. I have been involved in numerous investigations concerning complex financial matters and other fraud schemes. I have also received training on obtaining and reviewing electronic records, including email communications.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All dates, times, and amounts are approximations.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1343 (wire fraud) and 1028A (aggravated identity theft) (collectively, the **"Target Offenses"**) have been committed by ████ ████ in the Southern District of Alabama and elsewhere.

5. There is probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court

is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE



3





5



6



## PRESERVATION REQUESTS

14.     In November 2021 and May 2022, I sent preservation requests to the Provider for the **Target Accounts**. In general, an email that is sent to a subscriber is stored in the subscriber's "mail box" on the Provider's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on the Provider's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on servers for a certain period of time.

## BACKGROUND CONCERNING GOOGLE[3]

15.    Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

16.    In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

17.    Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

18.    Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records

---

[3] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

indicating ownership and usage of the Google Account across services, described further after the description of services below.

19.     Gmail includes the contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails. Google Contacts includes any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history. Google Calendar includes any records pertaining to the user's calendar(s), including: Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history. Google Messaging includes the contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history. Google Drive and Google Keeps include the contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS

9

data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record. Google Photos include the contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses. Google Maps include all maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history. Google Location History includes all Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history. Google Chrome includes all Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords;

10

autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history. Google Play includes all activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, and other files; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, timestamps, and change history. Google Voice includes all Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history.

20.    Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

11

21.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

22.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services used by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

23.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

24.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when,

where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion

25.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.   Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation

26.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

27.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

13

28.     Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

29.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## BACKGROUND CONCERNING EMAIL

30.     In my training and experience, I have learned that the Provider provides a variety of online services, including electronic mail access, to the public. The Provider allows subscribers to obtain email accounts at the domain name like the email account listed in Attachment A. Subscribers obtain an account by registering with the Provider. During the registration process, the Provider asks subscribers to provide basic personal information. Therefore, the computers of the Provider are likely to contain stored electronic communications (including retrieved and unretrieved email for the Provider's subscribers) and information concerning subscribers and their use of the Provider's services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

14

31.     A subscriber of the Provider can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by the Provider. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

32.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

33.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the

15

account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

34.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

35.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account, along with the time and date of that access. By determining the physical location

16

associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

36.     Based on the forgoing, I submit there is probable cause to believe that Lammon has committed the **Target Offenses** and that evidence of those offenses is contained within the **Target Accounts**. Accordingly, I request that the Court issue the proposed search warrant, covering the time period **between and including January 1, 2020 through the present**. Because the warrant will be served on the Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

37.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation and is neither public nor fully known to the target of the investigation. Based upon my training and experience, I have learned that online

17

criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other criminals as they deem appropriate, i.e., post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Dated June 30, 2022.

Daniel R. Sigmond
Special Agent
Federal Bureau of Investigation

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(A) THIS
DAY OF JUNE 2022.

P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE

18

Case 1:21-mj-09000-MSI Document 2 Filed 07/04/22 Page 20 of 24
Case 1:22-mj-00098-MSI Document 1 Filed 07/04/22 Page 197 of 23
PageID #: 37

## ATTACHMENT A

### Property to Be Searched

This    warrant    applies    to    information    and    records    associated    with

█████████████████████████████████████████████████ (the "Accounts") that

are stored at premises owned, maintained, controlled, or operated by Google LLC, a company

headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

1

**ATTACHMENT B**

**Particular Things to be Seized**

I.   **Information to be disclosed by Google LLC ("Google")**

To the extent that the information and records described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from ███████████ unless otherwise indicated:

  a.   All business records and subscriber information, in any form kept, pertaining to the Account, including:

   1.   Names (including subscriber names, user names, and screen names);

   2.   Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

   3.   Telephone numbers, including SMS recovery and alternate sign-in numbers;

   4.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

   5.   Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

   6.   Length of service (including start date and creation IP) and types of service utilized;

   7.   Means and source of payment (including any credit card or bank account number); and

2

8.      Change history.

b.      All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.      Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, videos, text messages, documents, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken;

f.      The contents of all emails associated with the account from ██████████ including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

g.      The types of service utilized;

h.      All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history; and

i.      The contents of all files and other records stored on Google services, including all device backups, all Google and third-party app data, all files and other records related to GMail, Google Photos, Google Contacts, Google Calendar, Google Messaging, Google Drive, Google Keeps, Google Maps, Google Play, Google Voice, and Google One.

The terms "information and records" includes any and all data in whatever format they are stored or retained, including "communications" defined below. "Communications" include any and all electronic and cellular messages and signals capable of conferring information in whatever format they are stored or retained. The term "device" includes any and all cellular telephones, smartphones, tablets, computers, and other electronic data storage and communication devices.

3

## II.   Information to be Seized by the Government

Any and all information and records, including but not limited to the content of communications, described above in Section I that constitutes evidence or identifies instrumentalities of violations of 18 U.S.C. §§ 1343 (Wire Fraud) and 1028A (Aggravated Identity Theft) (hereinafter the **"Target Offenses"**) involving ████████████████████ ████████████████████████████████████████ including but not limited to, for each account or identifier listed on Attachment A, pertaining to the following matters:

a. █████████████████████████████████████████ ████████████ building contractors/subcontractors, bank accounts, payments, billing, insurance coverage, any and all financial transactions, and/or financial activity;

b. The state of mind of the device or Accounts holder or user, or any other person, as it relates to the **Target Offenses**;

c. The identity of the person(s) who created or used the Accounts, or who communicated with or using the Accounts about matters relating to the **Target Offenses**, including records that help reveal the whereabouts of such person(s);

d. How and when the Accounts or any associated device, or any other account or other device in contact with the Account and associated device, was used to determine the chronological context of the device use, account access, and events relating to the **Target Offenses**;

e. The geographic location of any device at times relevant to the investigation;

f. Identity of the person(s) who created the Account and/or used an associated device, including that help reveal the whereabouts of such person(s);

g. Identity of the person(s) who sent to or received communications from the Account or associated device about matters relating to the **Target Offenses**, including that help reveal their whereabouts;

h. The identity of any and all targets, co-conspirators, victims, witnesses, authorizing parties, or beneficiaries of the **Target Offenses**, including their roles in the **Target Offenses** and relationships to the crimes and one another;

4

i.  Additional financial and electronic accounts and devices used by targets, co-conspirators, victims, witnesses, authorizing parties, or beneficiaries of the **Target Offenses**;

j.  Additional contact information used by targets, co-conspirators, victims, witnesses, authorizing parties, or beneficiaries of the **Target Offenses**;

k.  Any history of deleting information by targets, co-conspirators, victims, witnesses, authorizing parties, or beneficiaries of the **Target Offenses**;

l.  Any internet or other search history by targets, co-conspirators, victims, witnesses, authorizing parties, or beneficiaries of the **Target Offenses**; and

m.  Any additional evidence of the **Target Offenses**.

The terms "information and records" includes any and all data in whatever format they are stored or retained, including "communications" defined below. "Communications" include any and all electronic and cellular messages and signals capable of conferring information in whatever format they are stored or retained. The term "device" includes any and all cellular telephones, smartphones, tablets, computers, and other electronic data storage and communication devices.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5